# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**CHARLES STREET AFRICAN METHODIST EPISCOPAL CHURCH OF BOSTON,**<br><br>Debtor | **Chapter 11**<br>Case No. 12-12292-FJB |

### MEMORANDUM OF DECISION ON
### REQUEST OF DEBTOR TO PROHIBIT CREDIT BIDDING

In conjunction with its proposed sale of certain real property, the debtor and debtor-in-possession, Charles Street African Methodist Episcopal Church of Boston ("CSAME"), has moved for an order prohibiting OneUnited Bank ("OneUnited"), which holds mortgages on the properties in question, from credit bidding at the sale. CSAME would have the Court deny the option of credit bidding "for cause" within the meaning of 11 U.S.C. § 363(k), the cause being that OneUnited's secured claims are subject to bona fide dispute by virtue of CSAME's assertion of counterclaims that, by setoff, would reduce the amount of those claims to zero. OneUnited and the United States Trustee have objected to the request. For the reasons set forth below, the Court will deny the request except as to the first $50,000 of the sale price, which is needed to fund payment of the break-up fee that would be payable were OneUnited the successful bidder. As to the balance of the purchase price, the Court holds that OneUnited has not established cause to limit or deny OneUnited's prerogative under § 363(k).

**FACTS AND PROCEDURAL HISTORY**

    a.    **The Sale Motion**

CSAME owns two contiguous parcels of real property known as the RRC Property and the Storefronts (collectively, the "Assets") and has moved for authority to sell them together to its stalking-

horse bidder, Action for Boston Community Development, Inc., ("ABCD"), a Massachusetts nonprofit corporation, or the high bidder at a proposed auction. The proposed sale would be free and clear of all liens, claims, and encumbrances. Under an agreement with ABCD (the "Stalking Horse Purchase Agreement"), CSAME will be obligated to pay to ABCD a $50,000 break-up fee if ABCD is not ultimately the successful bidder. ABCD's stalking horse bid is in the amount of $2,000,000. Other prospective purchasers may bid for the Assets at a final auction provided they satisfy certain requirements, including the timely submission of a counteroffer of at least $2,100,000 with a cash deposit of $210,000. Another nonprofit corporation, Horizons for Homeless Children, Inc. ("Horizons"), has indicated its intent to bid for the Assets.

CSAME's motion to approve the sale (the "Sale Motion") included a request for a preliminary order to, among other things, (i) approve the break-up fee, (ii) approve proposed bidding procedures, and (iii) prohibit OneUnited from credit bidding for the Assets. By a separate memorandum of decision, the Court has indicated that it will approve the break-up fee and bidding procedures and schedule a final hearing on the Sale Motion in time to close the sale by the end of June 2014. The Court indicated in that memorandum of decision that it would address the credit bidding issue separately.

    **b.**    **Claims of OneUnited**

OneUnited filed a proof of claim, asserting secured claims based on two loans made by OneUnited to CSAME on October 3, 2006: the "Church Loan," under which CSAME borrowed $1,115,000, with principal and unpaid interest due in full on December 1, 2011; and the "Construction Loan" (together with the Church Loan, "the Loans"), an 18-month non-revolving line of credit of up to $3,652,000 for the purpose of constructing a community center, the Roxbury Renaissance Center ("RRC"). OneUnited claims that the balances on the petition date were $1,188,562.90 on the Church Loan and $3,815,795.70 on the Construction Loan, including "default/maturity interest" of $792,425.92 on the Construction Loan and $58,416 on the Church Loan. In addition to the prepetition balances,

OneUnited also asserts entitlement to "post-petition interest, attorney's fees and costs, pursuant to 11 U.S.C. § 506(b)." CSAME objected to the default/maturity interest component of OneUnited's claim. After an evidentiary hearing, the Court sustained that objection; OneUnited appealed, and on September 30, 2013, the District Court affirmed; a further appeal to the Court of Appeals was dismissed by agreement.

The OneUnited Claims are also subject to other counterclaims in state court litigation between CSAME and OneUnited, which litigation was automatically stayed upon CSAME's bankruptcy filing. In the plans of reorganization it has filed to date, including one recently filed and still pending, CSAME proposed that it would retain and litigate these counterclaims after confirmation of the plan. Proceeds from the prepetition sale of the properties securing OneUnited's claim would be held in escrow until the state court litigation was completed.

The Loans are secured by CSAME's real property. The Church Loan is secured by mortgages on the Storefronts and two other properties. The Construction Loan is secured by mortgages on the RRC Property and two other properties. The properties that secure the Construction Loan do not also secure the Church Loan, and the properties that secure the Church Loan do not also secure the Construction Loan.

    **c.**     **CSAME's Second Objection to Proof of Claim of OneUnited**

Eight days after filing the Sale Motion, CSAME filed a second objection to OneUnited's Proof of Claim (the "Second Objection"). The Second Objection was filed in conjunction with the Sale Motion for the express purpose of demonstrating that OneUnited's claim is in bona fide dispute. The Second Objection essentially interposes, by way of setoff, three counterclaims against OneUnited that, if successful, would wholly eliminate OneUnited's claim. Each counterclaim is asserted under Mass. Gen. Laws ch. 93A; one is also asserted under contract law. The first two counterclaims are reiterations of

counterclaims that CSAME asserted in the state court litigation between CSAME and OneUnited. As most-concisely articulated by CSAME, the counterclaims are as follows:

- "OneUnited willfully and knowingly structured the Construction Loan so that the RRC construction project was substantially underfunded from the beginning, leading predictably to the Church's [CSAME's] inability to finish the project and default on the Loan. The Church thus seeks damages under ch. 93A against the Bank for unfair and deceptive origination of the Construction Loan."

- "[CSAME] further seeks damages, under contract law and ch. 93A, for the Bank's refusal to fund the tenth draw request to Thomas [CSAME's general contractor] under the Construction Loan, which led to a failure to complete construction on the RRC."

- "[OneUnited] acted in an unfair and deceptive manner, entitling the Church to damages under ch. 93A, by prosecuting the state court action against the Church to collect on the Construction Loan and by initiating a foreclosure action on the Church Loan collateral with no intent to pursue those actions to completion." "OneUnited's commercially unreasonable foreclosure action, along with the Bank's prior collection activities, led directly to the filing of this Chapter 11 case and very substantial diminishment in the financial stability of [CSAME], which had previously been raising funds from the congregation at a significantly higher level. It also caused a very significant delay in the construction of the RRC, with attendant diminishment in value."

CSAME filed the Second Objection only on April 30, 2014. It has not been scheduled for adjudication and cannot reasonably be adjudicated in advance of the proposed sale, which at present must occur before the end of June. CSAME does not seek to have the Second Objection decided before the sale. OneUnited states that, if the Court is inclined to deny it leave to credit bid, the Second Objection should be adjudicated before the sale.

4

### d.  Arguments of the Parties

CSAME seeks a prohibition of credit bidding on a single, narrow basis:  that OneUnited's claim is subject to bona fide dispute, which bona fide dispute constitutes "cause" under 11 U.S.C. § 363(k) to prohibit credit bidding.  CSAME does not advance, as cause to prohibit credit bidding, that OneUnited's claim is not an "allowed" claim within the meaning of § 363(k).  CSAME does contend that other grounds exist on which a prohibition on credit bidding might be predicated here:  (i) concern that OneUnited's ability to credit bid would chill the bidding or depress interest in the Assets and (ii) concern that OneUnited may be interested in bidding for improper, ulterior motives.  But CSAME hastens to add that, for tactical reasons—especially a desire to avoid the need for a long evidentiary hearing and to present the issue in such a way as the Court can make an up or down decision simply as a matter of law, on undisputed facts—it is *not* relying on these alternate grounds.  CSAME expressly disavows any reliance on *In re Fisker Automotive Holdings, Inc.*, 2014 WL 210593 (Bankr. D. Del. 2014) and its rationale, and therefore this motion presents no occasion to address *Fisker*'s rationale and the types of "cause" at issue there.

OneUnited objects, arguing that the right to credit bid is too important to be taken from a creditor by the filing of a last-minute objection that cannot be adjudicated before the sale.  OneUnited disputes the merits of the counterclaims on which the Second Objection is based and suggests that if the counterclaims had merit, they would have been asserted and litigated earlier in the case, and that this is nothing but a cynical ploy to disenfranchise OneUnited by underhanded means.  The United States Trustee—whose purpose in weighing in on this issue is unclear—argues that the existence of a bona fide dispute as to a secured claim is not necessarily "cause" within the meaning of § 363(k) and, for a host of reasons, does not here amount to cause to prohibit credit bidding by OneUnited.

**DISCUSSION**

Section 363(k) of the Bankruptcy Code states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k). Under this subsection, the holder of an allowed claim that is secured by a lien on property being sold in bankruptcy may, if it is the purchaser of the property at sale and "unless the court for cause orders otherwise," pay the purchase price by offset against its claim.[1] That is, the claim holder may pay the purchase price with its claim, which is what is meant by the non-statutory term "credit bid." This right of a secured creditor to credit bid is subject to two express limitations: it applies only where the creditor's lien secures an "allowed" claim; and even where the claim is allowed, the court "for cause" may order otherwise. The statute does not define cause for denying leave to credit bid.

Notwithstanding the filing of its Second Objection, CSAME does not contend (either in its brief or in its oral arguments), as a basis for disallowing credit bidding, that OneUnited's secured claims are, by virtue of the pending objection, *not* "allowed" within the meaning of this subsection. Accordingly, for purposes of the present motion, I need not and do not decide that issue. CSAME instead argues only that the counterclaims articulated in the Second Objection are "cause" within the meaning of § 363(k) to disallow credit bidding.

I agree with the United States Trustee that the standard here is the existence or not of "cause," and that the existence of a bona fide dispute as to the secured claim is not necessarily cause. In many cases, the existence of a bona fide dispute as to the secured claim is cause. Here, however, I conclude that the counterclaims do not amount to cause to prohibit credit bidding.

---

[1] The right in question is only a right to pay a successful bid by offsetting the creditor's claim against the purchase price. The credit bidder does not otherwise enjoy special consideration in the bidding process. If, for example, the final round of bidding is by sealed bids, the creditor may submit a final sealed bid but is not entitled to a special opportunity to top a higher bid than its own.

I rest this decision primarily on the nature of the objections articulated in the Second Objection. They do not challenge OneUnited's underlying claims[2] but instead interpose counterclaims as the basis of a defense of setoff. Of course, setoff is a valid defense, but it is an affirmative defense. The burden of proving it rests on CSAME. And the defense is not one that undercuts the existence of the primary claim; CSAME does not dispute the validity of the underlying loan agreements, the validity, perfection, or priority of OneUnited's mortgages, the amounts claimed to be due, or anything intrinsic to either of OneUnited's claims. Nor does CSAME allege that the mortgages or loan agreements may be avoided. Rather, CSAME asserts claims of its own that it would satisfy by setoff against OneUnited's otherwise valid claims. In short, there is no dispute about the validity or extent of OneUnited's secured claims.

CSAME expresses a concern that, if OneUnited is permitted to credit bid, then any judgment that CSAME may ultimately obtain on the counterclaims will or may be uncollectible; credit bidding would create a credit risk. The claim against which the counterclaim would be satisfied would already have been expended, at least in part.

While I agree that credit risk is sometimes cause to disallow credit bidding, I disagree that it is a valid basis here. Credit risk is cause for disallowance of credit bidding when the creditor's own claim is in dispute. As a general rule, a secured creditor should not receive payment on its claim before objections to the claim are resolved; otherwise, estate assets may be distributed in satisfaction of a claim that may later be deemed invalid, at which point the "creditor" may be unable or unwilling to return the distribution to the estate, and the estate may have to expend scarce funds to recover it—if it is able to mount such an effort at all. Here, there is no risk of a distribution on an invalid claim; instead there is a risk that an untested counterclaim will go unsatisfied. CSAME would be using a denial of credit bidding as, in essence, a form of prejudgment security, a purpose that I doubt it was intended to serve.

---

[2] OneUnited has filed only one proof of claim, but the proof of claim in fact asserts two separate secured claims, one arising from the Church Loan, the other from the Construction Loan, each being secured by its own separate set of assets. It is therefore more accurate to speak of OneUnited as having two claims.

Insofar as CSAME may be concerned about credit risk and prejudgment security, it may yet seek security by the usual means, such as an attachment of free assets to secure the counterclaims.[3] Moreover, it is unlikely that, even if OneUnited is the successful bidder, it will expend all of both of its claims in acquiring the Assets. CSAME will have the balance of these claims to look to for satisfaction of its counterclaims. For these reasons, I conclude that, except to the limited extent set forth in the following paragraph, CSAME has not established cause to prohibit credit bidding for the Assets.

In the alternative, CSAME has asked for a narrower limitation on credit bidding. CSAME points out that, under bid procedures that the Court has indicated it will approve, bids at the Auction must include at least $210,000 in cash as a deposit, to be used in part to pay the break-up fee to ABCD, if triggered. Therefore, to the extent the Court permits OneUnited to credit bid, CSAME requests that the Court require OneUnited, in any credit bid, to submit at least $210,000 in cash as a deposit, and to order that such deposit will be used in part to pay the break-up fee to ABCD if OneUnited should prevail at the Auction with its credit bid. OneUnited has not opposed this request and has not disputed that the need to fund the break-up fee is cause to limit the right to credit bid. I agree that the need to fund the break-up fee is cause to limit the right to credit bid. However, I see no reason to require that the cash portion of any bid by OneUnited exceed the $50,000 needed to fund the break-up fee should OneUnited prevail at the auction. Accordingly, I will limit the right to credit bid by requiring that the deposit that OneUnited must submit in order to participate in the auction must include cash of $50,000. The balance of the deposit and, if OneUnited is the successful bidder, of the purchase price may be paid by credit bid.

---

[3] I make no findings as to OneUnited's creditworthiness or solvency or the extent of its unencumbered assets. The present motion raises the issue of credit risk in only a general way, as the reason why a bona fide dispute as to a secured claim creates cause to deny leave to credit bid.

I do not suggest that an attachment is available in conjunction with a simple objection to claim. An attachment could be sought in the pending state court litigation or, if CSAME would convert its counterclaims from defenses to affirmative demands for relief in this court, in an adversary proceeding under Fed. R. Bankr. P. 7001 *et seq.* See Fed. R. Bankr. P. 3007(b).

To avoid later confusion, I add one final word about credit bidding.  The properties being sold include one that secures the Church Loan and another that secures the Construction Loan.  They are being sold as a unit.  Section 363(k) permits a secured creditor to credit bid for an asset with the claim for which the asset serves as collateral—and only with that claim.  If OneUnited elects to credit bid, it will have to do so with a portion of each of its secured claims, and it will have to specify in its bid the amount of each claim that makes up the total bid.

A separate order will enter consistent with the above rulings.

Date:  May 14, 2014

_____
Frank J. Bailey
United States Bankruptcy Judge