**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>**CHARLES STREET AFRICAN METHODIST EPISCOPAL CHURCH OF BOSTON,**<br><br>           Debtor | Chapter 11<br>Case No. 12-12292-FJB |

**MEMORANDUM OF DECISION ON**
**JURISDICTION, AUTHORITY, AND PROCEDURE FOR ATTORNEY'S LIEN DISPUTES**

In the above-entitled bankruptcy case, law firms Pierce Atwood LLP ("Pierce") and Choate, Hall & Stewart LLP ("Choate") (together, "the Firms"), as former attorneys for secured creditor OneUnited Bank ("the Bank"), have separately filed notices that they assert attorneys' liens under MASS. GEN. LAWS ch. 221, § 50 on the Bank's claims in this case and the proceeds thereof, including certain sale proceeds being held in escrow, for unpaid fees and expenses incurred in connection with their representation of the Bank in the case.  Now the chapter 11 debtor and debtor-in-possession, the Charles Street African Methodist Episcopal Church of Boston ("the Church"), has proposed a plan of reorganization pursuant to which it would distribute the escrowed proceeds in partial satisfaction of the Bank's secured claims; and the same plan requires quantification of the extent to which the Bank's postpetition attorney's fees may, pursuant to 11 U.S.C. § 506(b), be added to one of its secured claims. The Church has argued that (i) the Bankruptcy Court has exclusive jurisdiction to determine and enforce the Firms' attorneys' liens, (ii) that, by virtue of their notices of attorney's liens, the Firms have commenced proceedings in the bankruptcy court to determine and enforce the attorneys' liens, and (iii) that, given the substantial overlap of factual, evidentiary, and legal issues between the § 506(b) litigation and the attorney's lien litigation, proceedings to determine and enforce the attorneys liens should be tried with the § 506(b)

litigation.[1] The Firms support this proposal. The Bank opposes it and argues that the bankruptcy court lacks both jurisdiction over and authority to determine the attorneys' liens and, in any event, should exercise its discretion to abstain.  The following constitute my findings and ruling on the issues.

    A. **The Attorneys' Liens Disputes, and How they Relate to the Bankruptcy Case**

The Church commenced this bankruptcy case on March 20, 2012. Almost immediately, Pierce attorneys appeared for the Bank, and they continued to represent the Bank until October 25, 2013, when they withdrew as counsel to the Bank. Around the same time, Choate attorneys first appeared for the Bank. They continued to represent the Bank until January, 2017.  The Bank has not fully paid the fees that Pierce and Choate claim are due for the services they rendered the Bank in this case.

The Bank asserts two secured claims in this case, known as the RRC Secured Claim and the Church Secured Claim. Each was secured by three parcels of real estate. During the bankruptcy case, in two separate court-approved sales, the Church sold three of the six parcels that secure the Bank's claims. The net proceeds, which total approximately $3 million, are being held in escrow by Choate, to be disbursed only upon order of this court; they remain property of the bankruptcy estate and subject to the Bank's security interests.

In February 2017, the Bank moved for relief from the automatic stay to exercise its rights as to the sale proceeds. In response, Pierce and Choate each filed a notice of attorney's lien in the case. Each notice stated simply that, pursuant to MASS. GEN. LAWS ch. 221, § 50, the firm asserted an attorney's lien—Pierce in the amount of $1,426,599.00 and Choate in the amount of $343,523.57—for unpaid fees and expenses incurred in connection with the firm's representation of the Bank in the case.  Each notice stated that the asserted lien was upon "any and all causes of action, counterclaims, proofs of claim, or claims of OneUnited, upon any and all judgments, decrees, or other orders entered in favor of

---

[1] The evidentiary hearing on the § 506(b) litigation would be held in conjunction with the hearing on confirmation of the Church's plan, which hearing is scheduled to commence in approximately six weeks.

OneUnited, and upon the proceeds derived therefrom."[2] The Bank subsequently withdrew its motion. The proceeds remain in escrow and undistributed.

The Church has filed and is seeking confirmation of its Second Amended Third Plan of Reorganization ("the Plan"). Under the Plan, the Church would distribute the escrowed proceeds in partial satisfaction of the Bank's secured claims.[3]  Also under the Plan, the Church would give the Bank a promissory note for the balance owing on its Church Secured Claim.

This latter treatment requires quantification of the Church Secured Claim, which involves (i) adjudicating the value of the collateral securing the Church Secured Claim (if the parties do not agree) and (ii) adjudicating the Church's objection to the postpetition fee component of the Church Secured Claim.  Section 506(b) of the Bankruptcy Code permits an oversecured claim to grow postpetition, up to the value of the collateral, by the amount of "interest on such claim" and of "any reasonable fees . . . provided for under the agreement . . . under which such claim arose." 11 U.S.C. § 506(b). According to the Church, the value of the property securing the Church Secured Claim exceeds the amount that was owed on that claim on the date of the bankruptcy petition. The Bank has not yet taken a position on value; it has indicated that it may agree to the Church's valuation or seek to prove a higher value.  The Church and the Bank agree on the amount owing on the date of the bankruptcy petition and about the amount of interest that has accrued under the underlying promissory note since the date of the filing. Together, these consume all but $411,000 of the amount at which the Church values the collateral. In the amended proof of claim it has recently filed, the Bank asserts that its Church Secured Claim includes attorney's fees under § 506(b) of at least $411,000. The Church has objected to all asserted fees.  This

---

[2] The Bank has been represented by nine different firms over the course of this case. The fee portion of Its Church Secured Claim is based on fees owed to seven of them. After Pierce and Choate filed their notices of attorneys' liens, the Court established a deadline, now passed, for the assertion of attorneys' liens on OneUnited's recovery in this case, and no further liens have been asserted.

[3] The Plan specifies that on the effective date, the proceeds of the three sold properties would become property of OneUnited but shall be retained by Choate as escrow agent, to be released, either to Bank or the Firms, only on further order of the Bankruptcy Court, upon resolution of any then-remaining dispute between the Bank and the Firms as to the Bank's asserted liens on the proceeds.

objection is based in part on the Church's contention that the Bank has not paid, and does not believe it is obligated to the Firms to pay, many of the fees for which it has been billed by the firms and made claim against the Church.

The Bank argues that there is no overlap between its fee disputes with Pierce and Choate and its § 506(b) claim for fees in this case because it has included in its Church Secured Claim only those fees of Pierce and Choate that it has paid. This argument is unavailing because the Bank has neither specified (such as by time entry or task) the fees of Pierce and Choate it has paid and, in any event, has not stated that its disputes with Pierce and Choate do not extend to those services to which its payments have been applied (assuming they have been applied to specific services or time entries at all).  Unless and until the Bank removes from the basis for its Church Secured Claim any fees billed by Pierce or Choate for which it continues to maintain, vis-à-vis the Firms, that it is not liable, there is overlap between its § 506(b) litigation with the Church and its attorney's lien litigation with the Firms.

In view of this overlap, the Church has argued that any proceeding to determine and enforce the attorneys' liens should be tried with the § 506(b) litigation.  Both firms have expressed interest in adjudicating their lien rights to the anticipated distribution to the Bank now and here, as the Church proposes, but aside from filing their respective notices of attorney's lien, neither has filed a motion, adversary complaint, or request of any kind to advance that objective.  The Bank states that it has entered into a tolling agreement with Pierce under which neither party may commence an action against the other except upon sixty days' advance notice, and to date no such notice has been given by either party.  Both Pierce and Choate take no position as to whether a proceeding to determine the validity and extent of their attorneys' liens would be a core proceeding under 28 U.S.C. § 157(b). Both also assent to this court's entering final judgment in the matter if it is non-core, do not assert a jury claim as to the issues so triable, and would consent to the bankruptcy court's conducting the jury trial if the Bank were to demand one.  The Bank positions are that the bankruptcy court has no jurisdiction at

4

all over the attorneys' liens disputes, that those disputes are in any event not core proceedings, that the Bank would not consent under 28 U.S.C. § 157(c)(2) to the bankruptcy court's entering final judgment in those disputes, that the Bank is "virtually certain" to demand a jury as to such disputes, that the Bank will not consent under 28 U.S.C. § 157(e) to the bankruptcy judge's conducting the jury trial, and that the bankruptcy court should exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain from adjudicating the attorney's lien proceedings.

    **B. Jurisdiction**

Bankruptcy jurisdiction derives from 28 U.S.C. § 1334 and is vested by that statute in the district court, subject to referral to the bankruptcy court pursuant to 28 U.S.C. § 157(a). Subsection 1334(e)(1) gives the district court "exclusive jurisdiction . . . of property of the estate." 28 U.S.C. § 1334(e)(1). That subsection is not implicated here because, although the disputed proceeds are presently property of the bankruptcy estate, the Firms' attorneys' liens will not arise or attach until the proceeds are distributed to the Bank, and by virtue of that distribution, the estate's interest in the proceeds will be terminated. The attorney's lien disputes do not concern property of the bankruptcy estate; and, in those disputes, neither the estate nor the debtor continues to lay claim to the proceeds.

Subsection (b) creates three other bases of bankruptcy jurisdiction, giving the district court original but not exclusive jurisdiction over all civil proceedings (i) "arising under" the Bankruptcy Code, (ii) "arising in" a case under the Bankruptcy Code, or (iii) "related to" a case under the Bankruptcy Code. 28 U.S.C. § 1334(b). The attorney's liens disputes do no "arise under" the Bankruptcy Code, and no party suggests otherwise. Rather, they arise under Mass. Gen. Laws ch. 221, § 50, Massachusetts contract law, and the retention agreements between the Bank and the Firms. There is no "arising under" jurisdiction as to the attorney's lien disputes.

The Church maintains that jurisdiction exists because the attorneys' liens disputes "arise in" this bankruptcy case. The disputes arise in the bankruptcy case, the Church argues, because they arose

5

entirely in the course of the Bank's participation in the bankruptcy case and concern the Bank's actions in the case and decisions about how to proceed. The Church argues that arising in jurisdiction extends to disputes that do not arise under the Bankruptcy Code but which practicality and procedural fairness require be heard by the bankruptcy court. As in *Arnold Print Works, Inc. v. Apkin*, 815 F.2d 165 (1st Cir. 1987), the Church contends, arising in jurisdiction can arise from post-petition conduct in the case. Nor is it necessarily disqualifying, the Church maintains, that the debtor is not a party to the dispute.

I hold that the attorney's lien disputes do not "arise in" the bankruptcy case. In *Arnold Print Works*, the First Circuit determined, in part, that "arising in" jurisdiction extended to an action by a debtor-in-possession to enforce a sale contract that the debtor had made while in bankruptcy as part of its effort to liquidate the bankruptcy estate. The First Circuit emphasized that though the action arose under state contract law, the contract in question had been entered into by a debtor while in bankruptcy and in furtherance of the bankruptcy function of liquidating the estate. In contrast, each of the attorney's lien disputes is between two parties who are neither the debtor nor a representative of the estate. Neither dispute concerns the liquidation of the estate. The attorney's lien disputes may affect the § 506(b) litigation, which arises under the Bankruptcy Code, but they are separate and distinct from the § 506(b) litigation. To be sure, they arise from and during the Bank's participation in the case through the Firms, but that alone does not cause them to "arise in" the case within the meaning of § 1334(b).

The third jurisdictional basis in § 1334(b) concerns matters "related to" a bankruptcy case. Under the widely accepted test in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984), "related to" jurisdiction extends to any matter that "could conceivably have any effect on the estate being administered in bankruptcy." *Id*. at 994. "[T]he proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any

6

way impacts upon the handling and administration of the bankrupt estate." *Id*.  The attorney's lien disputes may affect the bankruptcy case in one way.[4]  Specifically, the determination of the validity and extent of an attorney's lien under MASS. GEN. LAWS ch. 221, § 50 involves, as a preliminary matter, a determination of the existence and extent of the underlying debt for fees. *Torphy v. Reder*, 357 Mass. 153 (1970) (petition to enforce a lien under § 50 involves, in part, the establishment of an indebtedness from the defendant to the plaintiff); *Elbaum v. Sullivan*, 344 Mass. 662, 664 (1962) ("The determination of whether the lien exists, and, if so, for how much, involves questions of contract under the common law.").  A final determination as between the Bank and each firm as to whether particular fees are in fact owed by the Bank to the Firm would be highly relevant to the Bank's burden under § 506(b) of establishing that it incurred and owes the fees it would add to its secured claim.  A ruling against one of the Firms as to particular fees, that the Bank does not owe the fees in question, would effectively preclude their being added to the Bank's secured claim under § 506(b). The attorney's lien disputes are therefore "related to" the bankruptcy case, and § 1334(b) establishes "related to" jurisdiction over them.

      I briefly address the other grounds of jurisdiction that the Church contends the court has here. The Church first argues that MASS. GEN. LAWS ch. 221, § 50 both gives this court jurisdiction over the attorney's lien disputes and makes that jurisdiction exclusive.  The Church relies on the following sentence from § 50: "Upon request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien[.]" MASS. GEN. LAWS ch. 221, § 50. The Church contends that, because the proceeding in which the fees arose, this bankruptcy case, is pending in the bankruptcy court, only the bankruptcy court may determine and enforce the asserted liens. The Court disagrees. A state, being a separate sovereign from the United States, may not, by statute or otherwise, create or define the jurisdiction of a court of the

---

[4] I am aware of no other.

7

United States. The Court's jurisdiction must be based in a federal grant or not at all. Section 50 creates no jurisdiction in this court.

The Church also argues that the court may adjudicate the attorney's lien disputes under the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides that:

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Again, the Court disagrees. This statute expressly creates jurisdiction only in the district court. Under 28 U.S.C. § 157(a), a district court may refer those matters in its bankruptcy jurisdiction to the bankruptcy courts for that district. The language defining that which may be referred closely mimics the language of 28 U.S.C. § 1334(b): "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). And the standing order of reference for this district, codified at L.R. 201 (D. Mass), closely adheres to the same language. Whatever the district court's supplemental jurisdiction, I see no reason to conclude that it could be or has been referred to the bankruptcy court or enlarges its authority.

Lastly, the Church argues that attorney's lien disputes between a creditor and its attorney for representation in a bankruptcy case are within the Bankruptcy Court's "inherent jurisdiction," as part of its authority to regulate the practice of attorneys before the court. The Church cites authority for the bankruptcy court's having inherent jurisdiction over matters of attorney discipline, and over the manner in which attorney conduct affects the proceedings before the court. However, it is a leap for which no authority is cited to say that that jurisdiction encompasses also simple fee disputes between a creditor and its counsel, even those that arise out of conduct in the proceedings. It is the relation of the attorney's conduct to the case that is the focus of the court's inherent jurisdiction, not the working out

of the consequences between the attorney and its client.  The bankruptcy court has no inherent jurisdiction over the attorney's liens disputes.

In summary, I conclude that the court has only "related to" jurisdiction over the attorneys' lien disputes.

### C. Authority

A district court may, and the district court for the District of Massachusetts has, referred to the bankruptcy judges for the district "all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a); L.R. 201 (D. Mass).  When the proceeding in question is a "core proceeding" within the meaning of § 157(b), the bankruptcy judge may, regardless of whether the parties consent, hear, determine, and enter final orders and judgment in the matter. 28 U.S.C. § 157(b)(1). However, as to any proceeding that "is not a core proceeding but that is otherwise related to a case under title 11," the bankruptcy judge may determine and enter final orders and judgment only with the consent of all parties.  28 U.S.C. § 157(c)(2). Without that consent, the bankruptcy judge may hear the matter but "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). For the same reasons as I determined that the attorney's lien disputes do not "arise in" this bankruptcy case, I also conclude that they are not core proceedings. The Firms have consented to the bankruptcy judge's entering final judgment, but OneUnited has not. Accordingly, in any such proceeding, the bankruptcy court would, at most, be limited to hearing the matter and entering proposed findings of fact and conclusions of law, subject to review *de novo* by the district court.

**D. Authority to Conduct Jury Trial**

The bankruptcy court's authority is further limited by § 157(e): "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). The district court has authorized the bankruptcy judges of this district to conduct jury trials, *see* L.R. 202 (D. Mass.), and Pierce and Choate consent to OneUnited's conducting any jury trial that may be required. However, the Bank states that it is "virtually certain" to demand a jury and will not consent to the bankruptcy judge's conducting it. The Bank would be entitled to a jury for this type of proceeding. *Torphy v. Reder*, 357 Mass. at 153 (1970) (right to trial by jury applies to portion of petition to establish a lien under MASS. GEN. LAWS ch. 221, § 50 that involves establishment of alleged debt). Were the Bank to demand a jury trial and not consent, the bankruptcy judge would be unable to conduct the jury trial. Any trial would then have to occur in the district court, provided a party-in-interest had moved under 28 U.S.C. § 157(d) for and obtained the district court's withdrawal of the reference as to the matters.

**D. What Procedure is Necessary?**

A proceeding to determine and enforce an attorney's lien arising under MASS. GEN. LAWS ch. 221, § 50 is "a proceeding to determine the validity . . . or extent of a lien" within the meaning Fed. R. Bankr. P. 7001(2). Rule 7001 states that any proceeding of that nature is an adversary proceeding and governed by the rules of Part VII of the Federal Rules of Bankruptcy Procedure. *Id*. The rules of Part VII require the filing of a complaint and its service with process. Fed. R. Bankr P. 7003 and 7004. The Church states that the procedure for adjudicating an attorney's lien is governed by state law, under which, the Church contends, a simple notice of assertion of an attorney's lien suffices to commence the proceeding, and the claim so asserted shall be determined in a summary manner. I need make no ruling as to what Massachusetts law requires in a state court proceeding because, except where a federal statute or rule

10

expressly adopts a state procedure, state law does not govern procedure in a federal court. The Church has cited no authority for the governance of state procedure here, and I know of none. The court concludes that the Firms' filing of notices of their respective liens did not commence proceedings to determine their liens.[5]

### E. Abstention

The Bank argues that the Court should exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain from adjudicating the attorney's lien disputes. That subsection states that a court exercising original but not exclusive jurisdiction over a civil proceeding related to a case under the Bankruptcy Code may, "in the interest of justice, or in the interest of comity with State courts or respect for State law," abstain from hearing the proceeding. 28 U.S.C. § 1334(c)(1). The Bank's reasons for abstention are in the nature of "interests of justice" and, predominantly, of judicial economy: the adjudication of these disputes would unnecessarily burden the parties and the court with litigation that would impede the real work in this case. The burden would be unnecessary, the Bank contends, because it concerns only fees that have not been paid, but the Bank's § 506(b) claim for fees is based only on fees that have been paid, and consequently the lien litigation cannot affect the § 506(b) litigation. The burden would be substantial because the lien litigation, which has not yet even been commenced, would delay the commencement of the confirmation hearing, would dilute the parties' focus on the issues germane to confirmation, and would possibly require the issues between the Bank and the Firms to be tried in two separate proceedings that would otherwise be consolidated: a jury trial here (or in the district court, if the reference were withdrawn) on the Firms' lien claims, and a later jury trial in state court on a malpractice claim that the Bank anticipates filing against Pierce. The Church responds that the Bank, despite its frequent insistence to the contrary, has structured its § 506(b) claim in a manner that makes

---

[5] If this proceeding were not governed by the rules of Part VII, it would be a "contested matter" and require a motion. Fed. R. Bankr. P. 9014(a) ("In a contested matter not otherwise governed by these rules, relief shall be requested by motion[.]"). A simple notice of lien would still be inadequate.

11

the disputed portions of the Pierce and Choate claims entirely relevant. The Church has also argued that, as its personnel and attorneys are likely to be dragged into any lien litigation between the Bank and the Firms, as it would be in the § 506(b) litigation, better to require that effort to be expended only once instead of twice, and all in the court and proceeding in which the fee dispute arose.

The court agrees with the Bank that the burden on the Bank, the Church, this case, and the bankruptcy court, perhaps also the district court, would be considerably intensified by adjudicating the lien claims in conjunction with the § 506(b) litigation, all as part of the plan confirmation process (of which the § 506(b) litigation is a distinct but inextricable part). However, the overriding consideration here is that this joinder is necessary to the § 506(b) litigation. As I concluded above, the Bank has structured its secured claim for postpetition fees to include reliance on all fees for which it has been billed by both Pierce and Choate, a large but unspecified portion of which it contends, vis-à-vis the Firms, it is not liable for. To be sure, the Bank is entitled to a credit for amounts already paid, and the Firms are not entitled to liens for fees already paid, but nothing in the Bank's claim removes any particular fees or services from its claim.

The Bank is in the admittedly difficult position of arguing against the Firms that it does not owe fees and, at the same time, preserving its right to compensation from the Church (and the guarantor) for reimbursement of the same fees should the Bank ultimately be determined liable for them. The Bank is free to fight on both fronts and, in doing so, to take diametrically opposed positions. Still, in the final analysis, both cannot be true; the Bank cannot recover from the Church fees for which it is not obligated to the Firms. The Bank itself should want to adjudicate the question of its liability first, as it is difficult to see how it can establish that it has incurred fees—part of its burden under § 506(b)—while continuing to deny liability for the same. Abstention, therefore, is not warranted. If the Bank demands a jury and does not consent under § 157(e), this may require that the lien litigation and the § 506(b) litigation be tried together in the district court and decided separately from the balance of the plan confirmation process.

It may also delay the confirmation hearing, to allow the lien litigation to ramp up. If necessary, then so be it. All of this will be worked out later.

    **F.   Conclusion**

    For the reasons set forth above, the Court will establish a deadline for the Firms to file complaints to determine the validity and extent of their asserted liens and related deadlines.

Date:  August 16, 2017                                          _____
                                                              Frank J. Bailey
                                                              United States Bankruptcy Judge